IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 4:17-CV-174-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and STATE OF NORTH CAROLINA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| A PERFECT FIT FOR YOU, INC., MARGARET A. GIBSON, and SHELLEY P. BANDY, | ) ) ) ) | |
| Defendants. | ) ) | |

On September 17, 2019, plaintiffs United States of America and the State of North Carolina

("plaintiffs") moved for a default judgment in the amount of $37,513,156.42 against defendant

Shelley P. Bandy ("defendant" or "Bandy"). See [D.E. 71]; Fed. R. Civ. P. 55(b). Bandy failed to

appear, plead, or otherwise defend this action. On June 26, 2019, the Clerk of Court entered default

[D.E. 68]. As explained below, the court grants the motion and awards plaintiffs $34,708,945.42.

I.

The court makes the following findings of fact based on the plaintiffs' complaint and on the

declaration attached as Exhibit A to plaintiffs' memorandum in support of their motion for default

judgment.

On May 16, 2016, Bandy filed an action in Carteret County Superior Court against A Perfect

Fit for You, Inc. ("APF4Y") and Margaret Gibson asserting partial ownership in APF4Y (Bandy v.

A Perfect Fit for You, Inc. (16 CVS 456)). Bandy asked the Carteret County Superior Court to

appoint a receiver and issue an injunction to prevent Gibson from disposing of company assets. The

Superior Court appointed a receiver ("Receiver") to manage A Perfect Fit for You, Inc. ("APF4Y" or "the company") until the court resolved the ownership issue, enjoined the company, Gibson, and Ronald Gibson (Margaret Gibson's husband) from transferring or disposing of assets traceable to the company (except for company assets used by the Receiver in the ordinary course of business), and transferred the case to the North Carolina Business Court. The court refers to this action as the "Business Court Action." [D.E. 1] ¶ 27.

The Receiver hired an auditor to perform a coding and billing audit of APF4Y's records. The auditor estimated that APF4Y had received over $12,000,000 of Medicaid payments for services or products in violation of Medicaid policy, because APF4Y did not have the necessary paperwork to support the medical necessity or delivery of the durable medical equipment ("DME") products for which it submitted claims to Medicaid. The State intervened in the Business Court Action to seek recoupment of the monies the State paid to APF4Y for products APF4Y inappropriately billed to the Medicaid Program. [D.E. 1] ¶ 28.

AP4FY filed cross-claims in the Business Court Action against Gibson and Bandy wherein APF4Y admitted that it never "ordered, purchased, or delivered" any cough stimulators, pneumatic compressors, specialized air mattresses, osteogenesis stimulators, or knee/ankle/foot orthotics. (Business Court Action, APF4Y Cross-Claim, ¶ 37). APF4Y also admitted that it billed the Medicaid Program and was paid for these products (Id. ¶¶ 34, 35), but does not have any of the "required medical or fiscal records in its possession" to support these billings (Id. ¶¶ 35, 36). [D.E. 1] ¶ 30.

The company's lack of payments, orders, or delivery documents for cough stimulators, pneumatic compressors, specialized air mattresses, osteogenesis stimulators, or knee/ankle/foot orthotics "would have been evident to anyone who reviewed the [c]ompany's financial books and

2

records." (Business Court Action, APF4Y Cross-Claim ¶ 37). APF4Y's financial records did not list payments to "any vendor or third-party entity" for these products. (Id. at ¶ 38); [D.E. 1] ¶ 31. APF4Y's Medicaid claims for cough stimulators, pneumatic compressors, specialized air mattresses, osteogenesis stimulators, or knee/ankle/foot orthotics were "wholly false and fictitious." (Business Court Action, APF4Y Cross-Claim ¶ 40). [D.E. 1] ¶ 32.

When interviewed, Bandy admitted that APF4Y did not provide osteogenesis stimulators or cough-stimulating devices to patients. [D.E. 1] ¶ 33. Additionally, Bandy admitted that she was only aware of APF4Y ever providing one air flotation bed or powered pressure-reducing air mattress to a patient. (Declaration of Andrew LeFaivre, ¶ f).

Bandy was APF4Y's primary salesperson, DME fitter, and Medicaid biller before she filed the Business Court Action alleging partial ownership of the company. Bandy submitted some or all of APF4Y's Medicaid claims, including those for powered air flotation beds, osteogenesis stimulators, power wheelchair accessories, knee-ankle-foot orthoses, and cough-stimulating devices. Bandy also submitted Medicaid claims for dually-eligible Medicare/Medicaid patients without obtaining the necessary prior approvals or billing the Medicare program for the claims. Bandy acted with actual knowledge, reckless disregard, or deliberate ignorance of the falsity of APF4Y's Medicaid claims submissions for products APF4Y never provided to its Medicaid patients. [D.E. 1] ¶ 52.

Special Agent LeFaivre and other investigators interviewed individuals associated with APF4Y who all stated that Bandy was the individual responsible for submitting the company's DME claims to Medicaid. During the investigation, the investigators obtained numerous emails sent from referral sources directly to Bandy's email address regarding prospective new patients. APF4Y submitted false claims for DME to Medicaid on behalf of a vast majority of those patients listed in

3

emails sent directly to Bandy. Furthermore, many claims that APF4Y submitted to Medicaid on behalf of these patients listed dates of service that were almost one year before the patients were referred to APF4Y. [D.E. 1] ¶ 39 a, b.

During the investigation, investigators obtained and reviewed the contents of Bandy's Google account. An electronic document stored in Bandy's account appeared to be a client list from her former employer, Medical Park Pharmacy. The document listed the names, demographic information, and Medicaid identification numbers of numerous Medicaid beneficiaries on whose behalf APF4Y submitted false claims to Medicaid for DME. Included among those beneficiaries were several who were deceased on the dates of service listed on claims for DME submitted on their behalf to Medicaid by APF4Y. (Declaration of Andrew LeFaivre, ¶ i).

Plaintiffs seek damages against Bandy for false claims submitted, and false records and statements created or used, from March 2015 until June 2016. The first payment to APF4Y from Medicaid for false claims was on or about March 17, 2015. Plaintiffs also seek any money paid from Medicaid to APF4Y for claims for DME that the investigation found was not received by the Medicaid beneficiary, was not purchased by APF4Y, or was not ordered by the medical provider listed on the claim as the ordering provider. Those claims include, but are not limited to, claims for the following DME equipment: powered air flotation beds (billed using Healthcare Common Procedure Coding System [HCPCS] code (E0193)); osteogenesis stimulators (E0748); power wheelchair accessories (E1008); knee-ankle-foot orthoses (L2005); and cough-stimulating devices (E0482).

In early 2016, Bandy began submitting an increasing number of claims to Medicaid that listed HCPCS codes with which she was unfamiliar. The codes began with "E" and "K." Bandy stated that she continued submitting claims listing these HCPCS codes even though she did not know what

4

those codes represented. (Declaration of Andrew LeFaivre, ¶ k).

Medicaid paid APF4Y $10,082,815.14 for 811 false claims comprised of 1779 claim lines identified as part of the fraud scheme. The claims were billed to Medicaid from on or about March 5, 2015 to on or about June 11, 2016. (Declaration of Andrew LeFaivre, ¶ l).

## II.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, after the entry of default, plaintiff's complaint does not specify a "sum certain" or "a sum that can be made certain by computation," the court may enter a default judgment against the defendant. See Fed. R. Civ. P. 55(b)(1), (2).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Richardson v. Bostick, No. 511-CT-3045-FL, 2014 WL 3508916, at *5 (E.D.N.C. July 14, 2014) (unpublished); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986). However, "a default is not treated as an absolute confession by the defendant of his liability," and "the court must consider whether the unchallenged facts support the relief sought." Ryan, 253 F.3d at 780 (quotation omitted); Richardson, 2014 WL 3508916, at *5. The party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered, and attempts by the party against whom a default has been entered to attack the validity of the allegations deemed proven by the default are strictly limited. See, e.g., Ryan, 253 F.3d at 780; Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

If the court determines that liability is established and default judgment is warranted, the

court must independently determine the appropriate amount of damages. The damages alleged in the complaint are not controlling. See Ryan, 253 F.3d at 780–81; J&J Sports Prods., Inc. v. Bullard, No. 7:12-CV-111-FL, 2012 WL 5844807, at * 1 (E.D.N.C. Nov. 19, 2012) (unpublished); Arista Records LLC v. Gaines, 635 F. Supp. 2d 414, 416–17 (E.D.N.C. 2009); Fed. R. Civ. P. 55(b)(2)(B).

Although the court may conduct an evidentiary hearing to determine damages, it is not required to do so. Rather, the court may rely on declarations or documentary evidence in the record to determine damages. See, e.g., American Dairy Queen Corp. v. YS & J Enters., Inc., No, 5:14-CV-151-BR, 2014 WL 4055550, at *2 (E.D.N.C. Aug. 14, 2014) (unpublished); J&J Sports, 2012 WL 5844807, at *1. In entering default in a False Claims Act case, a hearing may not be necessary if the complaint contains the specific amount of the false claims. See United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist., No. 2:01-CV-00019-MR, 2016 WL 910191, at *2 (W.D.N.C. Mar. 9, 2016) (unpublished).

The well-pleaded facts contained in the complaint, along with the declaration, establish a basis for the relief sought and an award of damages. See, e.g., Graham Cty., 2016 WL 910191, at *2; Dairy Queen, 2014 WL 4055550, at *2; Arista Records, 635 F. Supp. 2d at 416. Moreover, the court has discretion under Rule 55(b)(2) to enter a judgment after a default has been entered. See Fed. R. Civ. P. 55(b)(2)

The False Claims Act provides for treble damages, plus $5,500 to $11,000 per false claim as a required statutory penalty. 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9); Cook Cty. v. United States ex rel. Chandler, 538 U.S. 119, 122–23 (2003); United States ex rel. Bank v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 397 (4th Cir. 2013); United States v. Byrd, 100 F. Supp. 2d 342, 344 (E.D.N.C. 2000). A court may award a penalty for each separate false form submitted as part of a false claim. See United States ex rel. Drakeford v. Tuomey, 792 F.3d 364, 386 (4th Cir. 2015).

6

The court also may award FCA treble damages and penalties on default judgment or summary judgment. See, e.g., Graham County, 2016 WL 910191, at *2; Byrd, 100 F. Supp. 2d at 342, 344; United States v. Convalescent Transps., Inc., No. 4:03-CV-32-FL, 2007 WL 2090210, at *7 (E.D.N.C. July 19, 2007) (unpublished).

Bandy participated in a scheme to present false statements and fraudulent claims to Medicare and Medicaid. The complaint and declaration establish that Bandy caused the false statements and false claims with actual knowledge. These findings of fact enable the court to determine damages (trebled under the False Claims Act) and statutory penalties (per false claim or false statement). Specifically, Bandy caused single damages in the amount of $10,082,815.14. Bandy also caused 811 false statements and false claims. Thus, Bandy is liable under the False Claims Act for treble damages of $30,248,445.42 (three times single damages established), and $4,460,500 in penalties (i.e., 881 penalties at $5,500 per penalty), for a total of $34,708,945.42.

### III.

In sum, the clerk SHALL enter default judgment against defendant Shelley P. Bandy in the amount of $34,708,945.42, because she knowingly caused false statements, caused false claims, and engaged in a fraudulent scheme to obtain federal funds.

SO ORDERED. This 14 day of November 2019.

JAMES C. DEVER III
United Stated District Judge

7